# Exhibit B

PTO/SB/30 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Request for Continued Examination (RCE) Transmittal | | |
|---|---|---|
| | **Application Number** | 13/424,054 |
| | **Filing Date** | 03/19/2012 |
| | **First Named Inventor** | Chris T. Thornberry |
| Address to:<br>Mail Stop RCE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | **Art Unit** | 3684 |
| | **Examiner Name** | Matthew Zimmerman |
| | **Attorney Docket Number** | 6338.157 |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**

Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. ☐ **Submission required under 37 CFR 1.114** Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

   a. ☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

       i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

       ii. ☐ Other _____

   b. ☑ Enclosed

       i. ☑ Amendment/Reply       iii. ☐ Information Disclosure Statement (IDS)

       ii. ☐ Affidavit(s)/ Declaration(s)       iv. ☑ Other Extension of Time _____

2. ☐ **Miscellaneous**

   a. ☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

   b. ☐ Other _____

3. ☐ **Fees** The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.

   a. ☐ The Director is hereby authorized to charge the following fees, any underpayment of fees, or credit any overpayments, to Deposit Account No. _____ .

       i. ☑ RCE fee required under 37 CFR 1.17(e)

       ii. ☑ Extension of time fee (37 CFR 1.136 and 1.17)

       iii. ☐ Other _____

   b. ☐ Check in the amount of $ _____ enclosed

   c. ☑ Payment by credit card (Form PTO-2038 enclosed)

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

**SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED**

| Signature | *Marc Brockhaus* | Date | 05/27/2015 |
|---|---|---|---|
| Name (Print/Type) | Marc A. Brockhaus | Registration No. | 40,923 |

**CERTIFICATE OF MAILING OR TRANSMISSION**

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Mail Stop RCE, Commissioner for Patents, P. O. Box 1450, Alexandria, VA 22313-1450, or facsimile transmitted to the U.S. Patent and Trademark Office on the date shown below.

| Signature | *Marc Brockhaus* | | |
|---|---|---|---|
| Name (Print/Type) | Marc A. Brockhaus | Date | 05/27/2015 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Electronically Transmitted:  05/27/2015                          PATENT


### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Application No: | 13/424,054 | Conf. No. 7006 |
| Inventors: | Chris T. Thornberry, Dale R. Thornberry | |
| Filed: | Mar. 19, 2012 | |
| TC/A.U.: | 3684 | |
| Examiner: | ZIMMERMAN, MATTHEW E. | |
| Title: | Method and System for Quick Square Roof Reporting | |
| Docket No.: | 6338.157 | |
| Customer No.: | 30589 | |

Mail Box Non-Fee Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450


### RESPONSE

The following is being submitted in response to the Office Action dated

November 28, 2014:

**Amendments to the Claims** begin on page **2** of this paper.

**Remarks/Arguments** begin on page **8** of this paper.

**Amendments to the Claims**

This listing of claims will replace all prior versions, and listings of claims in the application.

Listing of Claims:

1. (Currently Amended) One or more non-transitory computer readable medium storing a set of computer executable instructions for running on one or more computer systems that when executed cause the one or more computer systems to identify a geographic location of a roof; ~~determine contact information of one or more contractors within a region of interest of the geographic location of the roof;~~ determine a footprint and predominant pitch of the roof by analyzing one or more image showing the roof; ~~determine predominant pitch of the roof; and~~ determine an estimated roofing area of the roof based on the predominant pitch and the footprint of the roof; and generate a roof report including at least one image showing the roof and the estimated roofing area of the roof.


2. (Currently Amended) The one or more non-transitory computer readable medium storing a set of computer executable instructions for running on one or more computer systems of claim 1, that when executed further cause the one or more computer systems to determine contact information of one or more contractors within a region of interest of the geographic location of the roof, and to provide a roof report, wherein the roof report includes one or more ortho images of the roof, one or more oblique images of the roof, the estimated roofing

area and the contact information of one or more contractor within the region of interest of the geographic location of the roof.

3. (Previously Presented) The one or more non-transitory computer readable medium of claim 2, wherein the roof report includes contact information of the customer.

4. (Previously Presented) The one or more non-transitory computer readable medium of claim 1, wherein the one or more non-transitory computer readable medium comprises a first non-transitory computer readable medium of a first host system and a second non-transitory computer readable medium of a second host system.

5. (Previously Presented)  The one or more non-transitory computer readable medium of claim 1, wherein identifying the geographic location of the roof further comprises obtaining contact information of a customer.

6. (Previously Presented) The one or more non-transitory computer readable medium storing a set of computer executable instructions for running on one or more computer systems of claim 1, that when executed further cause the one or more computer systems to receive customer input to validate geographic location of the roof.

3

7. (Previously Presented) The one or more non-transitory computer readable medium of claim 6, wherein the geographic location includes coordinates and validation of the geographic location includes instructions for receiving customer input to alter one or more coordinates of the geographic location.

8. (Previously Presented)  The one or more non-transitory computer readable medium of claim 1, wherein identifying a geographic location of the roof includes identifying one or more edges of the roof in an image.

9. (Previously Presented) The one or more non-transitory computer readable medium storing a set of computer executable instructions for running on one or more computer systems of claim 1, that when executed further cause the one or more computer systems to identify edges of the roof; determine three-dimensional information of the edges including position, orientation and length using multiple oblique images from multiple cardinal directions; and, determine, automatically, one or more line segments forming a portion of a footprint of the roof utilizing position and orientation of the edges.

10. (Currently Amended)  The one or more non-transitory computer readable medium of claim 1, wherein determining the predominant pitch includes determining a plurality of pitch values with each pitch value associated with a portion of the roof, the predominant pitch based on the plurality of pitch values.

11. (Previously Presented)   The one or more non-transitory computer readable medium of claim 10, wherein each pitch value is associated with an estimated percentage of roof area to provide an average pitch value.

12. (Previously Presented) The one or more non-transitory computer readable medium storing a set of computer executable instructions for running on one or more computer systems of claim 1, that when executed further cause the one or more computer systems to provide the roof report to one or more contractors, the contractor located within the region of interest of the geographic location of the roof.

13. (Currently Amended)   A system, comprising:

two or more host systems, each host system having one or more non-transitory computer readable medium;

the non-transitory computer readable medium of the first host system storing a set of computer executable instructions that when executed by one or more processors causes the one or more processors to:

identify a geographic location of a roof;

determine contact information of at least one contractor within a region of interest about the geographic location of the roof;

the non-transitory computer readable medium of the second host system storing a set of computer executable instructions that when executed by one or more processors causes the one or more processors to:

determine a footprint and predominant pitch of the roof by analyzing one

or more image showing the roof;

~~determine a predominant pitch;~~

determine an estimated roofing area based on the predominant pitch and

the footprint of the roof; and,

provide a roof report, wherein the roof report includes one or more ortho

images of the roof, one or more oblique images of the roof, the

estimated roofing area and contact information of one or more

contractors within the region of interest.


14. (Currently Amended)   A roofing estimate method, comprising:

receiving, by at least one computer processor from a user via a user terminal, a

geographic location of a roof;

providing to the user, with the computer processor, imagery of the roof based on

the geographic location of the roof;

determining and providing, with the computer processor, an estimated roofing

area based at least on a predominant pitch and a footprint of the roof by

analyzing one or more image showing the roof, the footprint of the roof

determined at least in part using at least one image of the roof; and

providing, with the computer processor, contact information of one or more

roofing contractors within a region of interest of the geographic location of

the roof.

15. (Currently Amended)   The roofing estimate method of claim 14, further comprising:

providing, with the computer processor, a roof report, wherein the roof report includes one or more ortho images of the roof, ~~one or more oblique images of the roof,~~ the estimated roofing area and the contact information of one or more contractor within the region of interest of the geographic location of the roof.


16. (Previously Presented)   The roofing estimate method of claim 14, wherein the footprint of the roof is determined at least in part with oblique images of the roof.


17. (Previously Presented)   The roofing estimate method of claim 14, wherein the predominant pitch value of the roof based at least in part on the footprint of the roof as a boundary of the roof.


18. (Previously Presented)   The roofing estimate method of claim 14, wherein the predominant pitch is based on a weighted average of individual pitch factors for two or more portions of the roof.

<u>REMARKS</u>

This is intended to be a complete response to the Office Action mailed November 28, 2014, in which claims 1- 18 were rejected.  Claims 1-18 are pending, with claims 1, 13, and 14 being independent.  Claims 1, 2, 10, 13, 14, and 15 have been amended.  No new subject matter has been added.

Based on the preceding amendments and the following remarks, Applicants respectfully request the withdrawal of the rejections and the issuance of a timely notice of allowance for claims 1-18.

**Claim Amendments**

Applicants respectfully submit that the amendments to claims 1, 13, and 14 do not introduce any new matter.  Written description and enablement support for the claims can be found, for example, in original claim 1 and paragraphs [0073] - [0076] of the above-referenced patent application as originally filed. Therefore, no new matter is added by the amendments.

**Claim Rejection – 35 U.S.C. § 101**

Claims 1-18 were rejected under 35 U.S.C. § 101 as being directed to non-statutory subject matter. The Office Action stated that the claims as a whole, considering all claim elements both individually and in combination, do not amount to significantly more than an abstract idea. The Office Action asserted that the claims are directed "to the abstract idea of estimating areas."

8

Further, the Office Action stated that the additional elements in the claims other than the abstract idea amount to no more than: (i) mere instructions to implement the idea on a computer, and/or (ii) recitation of generic computer structure that serves to perform generic computer functions that are well-understood, routine, and conventional activities previously known to the pertinent industry. The Office Action further stated that, viewed as a whole, the additional claim elements do not provide meaningful limitations to transform the abstract idea into a patent eligible application of the abstract idea such that the claims amount to significantly more than the abstract idea itself.

Applicant respectfully asserts that claims 1-18 provide novel and non-obvious functions specific to the field of computer technologies and are patent eligible under 35 U.S.C. §101. Although the Applicant respectfully disagrees with the rejections of claims 1-18, such claims have been amended to expedite the prosecution and more clearly conform with the eligibility requirements under 35 U.S.C. § 101 in light of the Supreme Court's *Alice Corp.* opinion.  Since this Office Action was mailed in November 2014, the USPTO has issued Interim Guidance on Patent Subject Matter Eligibility (hereinafter "Interim Guidance") "which supplements the June 25, 2014, Preliminary Examination Instructions in view of the Supreme Court decision in *Alice Corp.* (June 2014 Preliminary Instructions) and supersedes the March 4, 2014, Procedure for Subject Matter Eligibility Analysis of Claims Reciting Or Involving Laws of Nature/Natural Principles, Natural Phenomena, And/Or Natural Products (March 2014 Procedure) issued in view of the Supreme Court decisions in *Myriad* and *Mayo*."

See Federal Register Vol. 79, No. 241 at 74619. The USPTO is also seeking public comment on the Interim Guidance and has set a deadline of March 16, 2015 for receiving comments[1].   Interestingly enough, a variety of intellectual property organizations and companies have submitted comments including the AIPLA, the American Bar Association, IBM, Microsoft and Google trying to interpret the Interim Guidance and pointing out where the Interim Guidance can be improved to assist the Examiners and Applicants in applying the law with respect to eligibility in a consistent manner.  As will be discussed in detail below, Applicant respectfully submits that claims 1-18 are patent-eligible under both the guidance issued by the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) and the Interim Guidance issued December 16, 2014 by the United States Patent and Trademark Office (hereinafter referred to as "the Office").

### Claims 1-20 are Patent Eligible under 35 U.S.C.§101

35 U.S.C. § 101 provides that "whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  As noted by the Office in its Interim Guidance, the Supreme Court has long held that §101 excludes certain subject matter from patent eligibility including abstract ideas, laws of Nature/Natural

---

[1] The comments are available on the USPTO's website at http://www.uspto.gov/patent/laws-and-regulations/comments-public/comments-2014-interim-guidance-patent-subject-matter.html.

Principles and Natural Phenomena.   These are referred to in the Interim Guidance as "Judicial Exceptions."

In *Alice*, the Supreme Court noted that an abstract idea itself is not eligible for patent protection since it is considered a principle, an original cause, a motive. *Alice*, 573 U.S. at 2355 (citing *Gottschalk v. Benson*, 409 US. 63, 67 (1972) and *Le Roy v. Tatham*, 55 U.S. 156 (1852)). However, as the Supreme Court recognized, every invention can be characterized at some level as an abstract idea. *Id.* at 2354. As described in *Alice*, step 1 of the *Mayo* test is not asking the Examiner to simply identify an abstract idea, rather it asks the Examiner to "determine whether the claims at issue are *directed to* one of those patent-ineligible concepts." *Id.* at 2355 (emphasis added). If the question were simply asking "What is the abstract idea?", every single patent claim would satisfy *Mayo* step 1 as being directed to an abstract idea – which is why the Supreme Court stated "[a]n invention is not rendered ineligible for patent simply because it involves an abstract concept.  Applications of such concepts 'to a new and useful end,' remain eligible for patent protection." and cautioned that "we tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.* at 2354.

Likewise, the Federal Circuit has stated that it would "not presume to define 'abstract' beyond the recognition that this disqualifying characteristic should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act." (*Research Corp. Techs. v.*

11

*Microsoft Corp.*, 627 F.3d 859, 868; 97 U.S.P.Q.2D (BNA) 1274, Fed. Cir. 2010, finding the patent claims at issue not to be invalid under §101 since the invention claimed "presents functional and palpable applications" in its field.)

This is also why the Interim Guidance states "[c]ourts tread carefully in scrutinizing such claims because at some level all inventions embody, use, reflect, rest upon or apply a law of nature, natural phenomenon, or abstract idea." Interim Guidance at 74622, first column.  The Interim Guidance mandates that the Examiner "determine whether <u>the claim as a whole</u> is directed to a judicial exception."  See Interim Guidance at 74622, first column.  The Interim Guidance clearly acknowledges that claims directed to a particular application of a judicial exception are patent - eligible, i.e., "[a]s an example, a robotic arm assembly having a control system that operates using certain mathematical relationships is clearly not an attempt to tie up use of the mathematical relationships and would not require a full analysis to determine eligibility."  See Interim Guidance at 74625.

Additionally, the Federal Circuit has stated that the,

"Supreme Court has already made abundantly clear that inventions incorporating and relying upon even 'a well known mathematical equation' do not lose eligibility because 'several steps of the process [use that] mathematical equation.' *Diehr, 450 U.S. at 185*. Indeed, the Supreme Court counseled: 'In determining the eligibility of respondents' claimed process for patent protection under section 101, their claims must be considered as a whole. It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis. This is particularly true in a process claim because a new combination of steps may be patentable even though all the constituents of the combination were well known and in common use before the combination was made.'

*Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 868; 97 U.S.P.Q.2D (BNA) 1274, Fed. Cir. 2010, citing *Diamond v. Diehr*, 450 U.S. 175, 188, 101 S. Ct. 1048, 1058, 209 U.S.P.Q. (BNA) 1 (U.S. 1981).

In analyzing the rejection, the Interim Guidance directs the Examiner to "identify the exception by referring to where it is recited (i.e., set forth or described) in the claim and <u>explain why</u> it is considered an exception. [Emphasis Added] See Interim Guidance at 74624, third column. Then, if the claim includes additional elements, identify the elements in the rejection and <u>explain why</u> they do not add significantly more to the exception." [Emphasis Added.] See Interim Guidance at 74624, third column. In other words, the Interim Guidance is directing Examiners to analyze all of the limitations in the claims and to provide a *prima facie* case of ineligibility for any §101 rejections.

In the present application, Applicant respectfully submits that a *prima facie* case of ineligibility has not been presented for Claims 1-18. In formulating the rejection, the Office Action contends that "[t]he claims is/are directed to the abstract idea of estimating area." But, "estimating area" is not claim language used in claims 1-18, and the Office Action does not explain why "estimating area" is a judicial exception. The Office Action also does not specifically identify any additional elements in claims 1-18, or explain why the language in all 18 claims does not add significantly more to the exception. In fact, the Office Action addresses all of the pending claims by stating that such are "no more than: (i) mere instructions to implement the idea on a computer, and/or (ii) recitation of generic computer structure that serves to perform generic computer functions

that are well-understood, routine, and conventional activities previously known to the pertinent industry" (see pages 2-3 of the Office Action) without providing any evidentiary support for these findings[2]. Under the Administrative Procedures Act and controlling federal case law, examiners must provide "substantial evidence" in support of all rejections. *In re Lee*, 61 USPQ 2d 1430 (Fed. Cir. 2002); *Dickinson v. Zurko*, 527 U.S. 150 (1999).   Conjecture, conclusory statements, or personal opinions cannot meet this requirement. *See* Administrative Procedure Act, 5 U.S.C. 500 *et seq.*; *In re Gartside*, 203 F.3d 1305, 1315 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999) (broad conclusory statements about the teaching of references are not "substantial evidence").

Even though a *prima facie* case of ineligibility has not been made, claims 1-18, as amended, will be compared to the Office's Interim Guidance to demonstrate why such claims are patent-eligible.

The Office's Interim Guidance sets forth a chart summarizing its Subject Matter Eligibility Test for Products and Processes.  The Office's chart is set forth below for the Examiner's convenience.

---

[2] This statement is not understood because the "Examiner agrees that the prior art of record fails to teach 'predominant pitch'" which is recited in all 18 claims.  See Page 4, Paragraph 9 of the Office Action.





Step 1 of the chart asks whether the claim is directed to a process, machine, manufacture or composition of matter.  In this case, claims 1-12 set forth "one or more non-transitory medium" which qualifies as a "manufacture," claim 13 sets forth a "system" which qualifies as a machine, and claims 14-18 sets forth a "roofing estimate method" which qualifies as a process.  Thus, claims 1-18 are all patent eligible under the first box of the subject matter eligibility test.

The next step, i.e. Step 2A, asks whether the claim is "directed to" a law of nature, a natural phenomenon, or an abstract idea.  In interpreting Step 2A, the Office has provided the following guidelines:

> A claim is directed to a judicial exception when a law of nature, a natural phenomenon, or an abstract idea is recited (i.e., set forth or described) in the claim. Such a claim requires closer scrutiny for eligibility because of the risk that it will "tie up" the excepted subject matter and pre-empt others from using the law of nature, natural phenomenon, or abstract idea. Courts tread carefully in scrutinizing such claims because at some level all inventions embody, use, reflect, rest upon, or apply a law of nature, natural phenomenon, or abstract idea. To properly interpret the claim, it is important to understand what the applicant has invented and is seeking to patent. For claims that may recite a judicial exception, but are directed to inventions that clearly do not seek to tie up the judicial exception, see Section I.B.3. regarding a streamlined eligibility analysis. [Emphasis Added] See Interim Guidance at 74622, First Column.

In this case, claims 1-12 specifies "determining an estimated roofing area."  Even assuming that "determining an estimated roofing area" falls within one of the judicial exceptions, it is believed that claim 1 clearly does not seek to tie up the judicial exception and is therefore patent eligible under the "streamlined eligibility analysis."   In particular, claims 1-12, as amended, specifically "determine[s] a footprint and predominant pitch of the roof by analyzing one or more image showing the roof" and the "estimated roofing area" being "based on the predominant pitch and the footprint of the roof." These are meaningful limitations that do not pre-empt all forms of "estimating area" or even "determining an estimated roof area." As in the Supreme Court *Diehr*[3] case, Applicant does not "seek to patent a mathematical formula" and does not "seek to pre-empt the use

---

[3] *Diamond v. Diehr*, 450 U.S. 175, 187, 101 S. Ct. 1048, 1057, 209 U.S.P.Q. (BNA) 1 (U.S. 1981).

of that equation." From the language of claim 1, it is apparent that the claimed invention is not directed to all forms of estimating area, but rather is tailored to a specific patent eligible application involving the determination of "an estimated roofing area" using a specified methodology, i.e., "based on the predominant pitch and the footprint of the roof" determined by "analyzing one or more image showing the roof."

Claims 1-12 do not preempt and disproportionately tie up the use of any abstract idea. To assist the Examiner in addressing the Applicant's response, the Examiner's attention is directed to the comments to the Interim Guidance provided by the AIPLA, which point out:

> The Guidance does not address how applicants may respond to such rejections nor how examiners are to evaluate such rebuttal arguments. Applicants should be able to rebut a rejection by submitting prior art that describes another use of the abstract idea or law of nature evidencing that the claimed invention does not risk "disproportionately tying up" the use of the underlying ideas. [footnote citing to *Alice*, 134 S. Ct. at 2354-2355, quoting *Mayo*, 132 S. Ct. at 1294].   Examiners should be instructed that if the applicant does so, the 101 rejection should be withdrawn. See page 13 of 14.

In this case, the Examiner's attention is respectfully directed to the Thornberry reference, i.e., U.S. Patent Publication No. 20100296693, of record, which shows and discusses measuring the area of a roof in Figures 5E-5F, and Paragraphs [0002], and [0103] – [0112].  For example, Paragraph [0002] states:

> [0002] Roof measuring, for example, dimension, length and areas has been done for many years, such as in connection with for estimating and bidding roofing jobs. Also, for many years, companies and products have offered such estimation services and reporting software reports using aerial imagery on which roof line outlines are traced, dimensions and areas are automatically based on those tracings, and vertical elevations (via pitch or otherwise) are included in mathematical models.

17

When one reviews the language of claims 1-12 <u>as a whole</u> as instructed by the Interim Guidance and the prior art to determine whether the claimed invention preempts and disproportionately ties up the use of the underlying ideas, it is apparent that claims 1-12 do not seek to tie up any judicial exception such that others cannot practice it. Claims 13-18 contain similar limitations and are eligible for the same reasons as claims 1-12. Under the Office's Interim Guidance, claims 1-18 do not need to proceed through a full analysis as their eligibility is self-evident. Therefore, Applicant respectfully requests withdrawal of the rejection of claims 1-18.

## The Claimed Invention Amounts to Significantly more than a Judicial Exception

As discussed above, Applicant respectfully submits that claims 1-18 provide novel and non-obvious functions specific to the field of computer technologies, do not seek to tie up any judicial exception and are thus eligible for streamlined analysis. However, assuming for the sake of argument, that claims 1-18 were considered to be directed to a judicial exception, Applicant respectfully submits that claims 1-18 include significantly more than the judicial exception and are therefore patent eligible.

As outlined in the Interim Guidance, if a claim is directed to a judicial exception, the Examiner should proceed to Step 2B of the analysis. Step 2B asks whether any element, or combination of elements, in the claim is sufficient to ensure that the claim amounts to significantly more than the judicial exception.

To assist Examiners in interpreting step 2B, the Office has provided the following

guidance:

> A claim directed to a judicial exception must be analyzed to
> determine whether the elements of the claim, considered both
> individually and as an ordered combination, are sufficient to ensure
> that the claim as a whole amounts to significantly more than the
> exception itself – this has been termed a search for an "inventive
> concept." To be patent-eligible, a claim that is directed to a judicial
> exception must include additional features to ensure that the claim
> describes a process or product that applies the exception in a
> meaningful way, such that it is more than a drafting effort designed
> to monopolize the exception. It is important to consider the claim as
> whole. Individual elements viewed on their own may not appear to
> add significantly more to the claim, but when combined may
> amount to significantly more than the exception. Every claim must
> be examined individually, based on the particular elements recited
> therein, and should not be judged to automatically stand or fall with
> similar claims in an application.   [Emphasis Added] Interim
> Guidance at 74624.

The Office provided further guidance as to what may be enough to qualify as

"significantly more" using limitations identified by the Supreme Court which

includes:

> Improvements to another technology or technical field;

> Adding a specific limitation other than what is well-understood,
> routine and conventional in the field, or adding unconventional
> steps that confine the claim to a particular useful application. See
> Interim Guidance at 74624, middle column.

Applicant respectfully submits that claims 1-18 all recite the determination

of an estimated roofing area based on the predominant pitch and the footprint of

the roof. Thus, claims 1-18 include improvements to technology for a particular

application, i.e., determining an estimated roofing area, and not simply to

"estimating area." Further, as acknowledged in the Office Action, "[t]he Examiner

agrees that the prior art of record fails to teach "predominant pitch" as explained

19

in paragraphs [0076] to [0078] and Fig. 7 of the applicant's specification."  See Page 4, Paragraph 9 of the Office Action.  The "determination of an estimated roofing area based on the predominant pitch and the footprint of the roof" provides an unconventional step that confines claims 1-18 to a particular useful application and renders claims 1-18 patent eligible under the Office's Interim Guidance.

Additionally, the Interim Guidance states that limitations that may be enough to qualify as "significantly more" when recited in a claim with a judicial exception include effecting a transformation or reduction of a particular article to a different state or thing. Interim Guidance at 74624. Transformation may be demonstrated through transformation of data. For example, in *PNC Bank v. Secure Axcess,* (CBM2014-00100, Decision - Institution of Covered Business Method Patent Review, Entered Sep. 9, 2014, Paper 10 at p.24), the PTAB panel found the claim at issue met the transformation prong of the machine-or-transformation test because "[t]he claim language requires '*transforming*' one thing ('received data') 'to create' something else ('formatted data') and further recites a particular manner of transforming ('by inserting an authenticity key')." Likewise, the "determination of an estimated roofing area based on the predominant pitch and the footprint of the roof" provides a transformation that qualifies claims 1-18 as significantly more than a judicial exception.

Therefore, Applicant respectfully submits that claims 1-18 are patent-eligible under 35 U.S.C. § 101.

## Claim Rejection – 35 U.S.C. § 102(b)

Claims 14-18 were rejected under pre-AIA 35 U.S.C. 102(b) as being anticipated by Thornberry (US 2010/0296693).  In formulating the rejection, the Office Action contends that Thornberry teaches receiving [data] (see Thornberry Fig. 4A-B); and providing [data] (see Thornberry Fig. 4A-B).

The Office Action noted that the data provided and data received was "non-functional descriptive material" because it does not functionally affect the way in which the receiving and providing are performed.  Although the Applicant respectfully disagrees with the present rejection of claims 14-18, claims 14-18 have been amended to specify "determining and providing, with the computer processor, an estimated roofing area based at least on a predominant pitch and a footprint of the roof."  These limitations set forth a novel function specific to the field of computer technologies which is not described in the Thornberry reference.  Thus, it is respectfully submitted that the present rejection under 35 U.S.C. §102 has been overcome.

In light of the foregoing, reconsideration and withdrawal of the rejection of claims 14-18 under 35 U.S.C. § 102 is respectfully requested.

## CONCLUSION

The foregoing is intended to be a complete response to the Office Action dated November 28, 2014.  Applicants respectfully request reconsideration and withdrawal of the rejections set forth in the Office Action and a timely notice of allowance for all of the pending claims 1-18.  Should the Examiner have any

questions or comments regarding the foregoing, or any other matter, the undersigned would welcome a telephonic interview with the Examiner.

Respectfully Submitted,

Marc A. Brockhaus, Reg. No. 40,923
Dunlap Codding, P.C.
P.O. Box 16370
Oklahoma City, OK  73113
Telephone:   (405) 607-8600
Facsimile:    (405) 606-8686

Attorney for Applicants

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13424054 |
| **Filing Date:** | 19-Mar-2012 |
| **Title of Invention:** | Method and System for Quick Square Roof Reporting |
| **First Named Inventor/Applicant Name:** | Chris T. Thornberry |
| **Filer:** | Marc Alan Brockhaus/Lori Radford |
| **Attorney Docket Number:** | 6338.157 |

Filed as Small Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 3 months with $0 paid | 2253 | 1 | 700 | 700 |
| **Miscellaneous:** | | | | |
| Request for Continued Examination | 2801 | 1 | 600 | 600 |
| **Total in USD ($)** | | | | **1300** |