IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC. and PICTOMETRY INTERNATIONAL CORP., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) C.A. No. 21-1852 (RGA) |
| ROOFR, INC., | ) ) ) |
| Defendant. | ) |

**DEFENDANT ROOFR INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO <u>DISMISS THE FIRST AMENDED COMPLAINT</u>**

OF COUNSEL:

Yury Kapgan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Kevin P.B. Johnson
Dallas Bullard
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
(650) 801-5000

Ron Hagiz
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendant Roofr, Inc.*

June 3, 2022

**TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | Introduction .................................................................................................................... | 1 |
| II. | The '800 Patent Is Ineligible ........................................................................................... | 1 |
| | A. Step One of *Alice*: The Claims Are Directed to an Abstract Idea ........................... | 1 |
| | B. Step Two of *Alice*: The Claims Fail to Recite an Inventive Concept ...................... | 3 |
| III. | The '538 Patent Is Ineligible ........................................................................................... | 3 |
| | A. Step One of *Alice*: The Claims Are Directed to an Abstract Idea ........................... | 3 |
| | B. Step Two of *Alice*: The Claims Fail to Recite an Inventive Concept ...................... | 6 |
| IV. | The '840 Patent Is Ineligible ........................................................................................... | 6 |
| | A. Step One of *Alice*: The Claims Are Directed to an Abstract Idea ........................... | 6 |
| | B. Step Two of *Alice*: The Claims Fail to Recite an Inventive Concept ...................... | 8 |
| V. | The Identified Claims Are Representative ...................................................................... | 9 |
| VI. | Roofr's Motion is Not Premature .................................................................................... | 10 |

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) .................................................................................................. 9

*British Telecommc'ns PLV v. IAC/InterActiveCorp.*,
    381 F. Supp. 3d 293 (D. Del. 2019) ......................................................................................... 10

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) ............................................................................................. 3, 6

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ........................................................................................... 4, 10

*CardioNet, LLC v. InfoBionic Inc.*,
    955 F.3d 1358 (Fed. Cir. 2020) .................................................................................................. 4

*CardioNet, LLC v. InfoBionic, Inc.*,
    2021 WL 5024388 (Fed. Cir. Oct. 29, 2021) ............................................................................. 4

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) .................................................................................................... 3

*Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) .................................................................................................. 9

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ............................................................................................. 2, 3

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ................................................................................................................... 4

*EagleView Techs., Inc. v. Xactware Sols., Inc.*,
    358 F. Supp. 3d 399 (D.N.J. 2019) ............................................................................................ 7

*EagleView Techs., Inc. v. Xactware Sols., Inc.*,
    485 F. Supp. 3d 505 (D.N.J. 2020) ............................................................................................ 7

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) .................................................................................................. 2

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) .................................................................................................... 9

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) .................................................................................................. 5

*IPA Techs., Inc. v. Amazon.com, Inc.*,
    352 F. Supp. 3d 335 (D. Del. 2019) ........................................................................................... 6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) ..................................................................................................................... 4

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016)......................................................................................... 1

*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) ...................................................................................... 2, 5

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
  2018 WL 6521978 (D. Del. Dec. 12, 2018)..................................................................... 7

*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017)..................................................................................... 3, 5

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)......................................................................................... 6

*Simio, LLC v. FlexSim Software Prods., Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020)......................................................................................... 9

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
  873 F.3d 1364 (Fed. Cir. 2017)......................................................................................... 5

*SynKloud Techs., LLC v. HP Inc.*,
  490 F. Supp. 3d 806 (D. Del. 2020)................................................................................. 6

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016)......................................................................................... 2

*TaKaDu Ltd. v. Innovyze, Inc.*,
  2022 WL 684409 (D. Del. Mar. 8, 2022) ........................................................................ 6

*Thales Visionix Inc. v. United States*,
  850 F.3d 1343 (Fed. Cir. 2017)......................................................................................... 6

*TriPlay, Inc. v. WhatsApp Inc.*,
  2018 WL 3545500 (D. Del. July 24, 2018) .................................................................... 10

*Yu v. Apple Inc.*,
  1 F.4th 1040 (Fed. Cir. 2021) .......................................................................................... 8

## Other Authorities

https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-1048_10082021.mp3 .......................8

Britain Eakin, *Fed. Circ. Weighs Undoing $375M EagleView Win Under Alice*, Law360
  (Oct. 8, 2021), https://www.law360.com/articles/1429560/fed-circ-weighs-
  undoing-375m-eagleview-win-under-alice (noting the Federal Circuit suggested
  that the patents "might be invalid under Alice"). ............................................................8

Adam Lidgett, *EagleView, Verisk End Patent Fight at Fed. Circ.*, Law360 (Nov. 9,
  2021), https://www.law360.com/articles/1439222 (noting that parties settled
  "about a month after the Federal Circuit appeared to call the win into question") ............8

**I.      INTRODUCTION**

To oppose Roofr's Motion, Plaintiffs rely heavily on unsuccessful prior challenges to their patent portfolio, but only one of the three patents at issue here has ever been the subject of such a challenge.  And it is clear, reviewing both the prior court's decision on that patent as well as the Federal Circuit's comments before Plaintiffs settled to avoid an adverse invalidity ruling, that even that patent is hardly immune from challenge.  The ineligibility of these patents is evident from Plaintiffs' own Opposition, which relies primarily on conclusory assertions about the alleged inventions of the asserted patents that are not reflected in the claim language itself, or inapposite comparisons to claims in other cases.  Plaintiffs also do not demonstrate how any alleged acclaim their technology received has any nexus to the asserted claims.  No matter how Plaintiffs attempt to sugarcoat it, each asserted claim is a variation on the same general abstract idea—selecting or measuring a roof in an image on a generic computer.

**II.     THE '800 PATENT IS INELIGIBLE**

### A.      Step One of *Alice*: The Claims Are Directed to an Abstract Idea

The claims of the '800 patent are directed to nothing more than the idea of selecting a roof from an image.  Plaintiffs contend the patent claims a "specific technique for identifying the roof of a building in an image." Opp. 9-12.  But that is not supported by the claims or the specification.

Plaintiffs' reliance on *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) is misplaced.  In *McRO*, the claims at issue were directed to "a specific asserted improvement in computer animation"—an improved automated process that "allow[ed] computers to produce 'accurate and realistic lip synchronization and facial expressions in animated characters' that previously could only be produced by human animators." 837 F.3d at 1313-1314 (citation omitted).  The claims of the '800 patent, however, do not recite a computer-centric solution that improves on existing technological processes.  Rather, the claimed "solution" is

1

directed to the same manual identification process that has long been done in the context of printed maps and atlases. *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) (noting that both the problems and claimed "solution" predated computers). Indeed, the claims require the *user* to identify the roof in the image using the basic functions of a computer as a tool. *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016).

Plaintiffs' arguments that Roofr seeks resolution of factual questions concerning the "conventionality" of the claim elements is wrong.[1] Opp. 12-13. There is no factual dispute here because the specification of the '800 patent explicitly states that the recited computer inputs and associated interface functions are conventional. '800 patent, 3:12-15, 10:19-22, 10:25-28.

Plaintiffs also incorrectly liken this case to *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). Opp. 12. In *DDR Holdings*, however, the claims at issue were directed to a problem unique to the Internet—*i.e.*, the fact that clicking a third-party link on a web page navigates to a different website—and claimed a solution that used a different, unconventional process to handle a user click on a third-party link. *Id.* at 1258-59. Here, however, the problem Plaintiffs identify (identifying a roof on an image) is not a problem unique to computers, and the patent does not describe any unconventional manner of performing this identification on a computer. Indeed, it requires the *user* to manually identify and select the roof in the image using generic computer inputs and user-interface elements. As Roofr's cited cases demonstrated, this renders the claims ineligible. Op. Br. 9-11. Plaintiffs' perfunctory attempt to distinguish this authority focuses on only trivial differences between those cases and this one. Opp. 13-14.

---

[1] Plaintiffs assert that Roofr "effectively concedes" that if EagleView "invented a way to utilize low resolution imagery and/or incorrectly geocoded data to create highly reliable roof reports," this would "constitute[] a patent-eligible claim." Opp. 13. Whether or not Plaintiffs invented any such technology is irrelevant, because that is not what is claimed. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016).

### B. Step Two of *Alice*: The Claims Fail to Recite an Inventive Concept

The claims of the '800 patent fail to transform the abstract idea into a patent-eligible application. Plaintiffs simply restate the claim elements and assert that the allegedly inventive concepts—"accurate roof measurements obtained from imagery instead of manual site visits, that overcame the limitations of poorly geo-coded image databases"—are contained therein. Opp. 14. But these concepts "simply restate[]" the abstract idea of selecting a roof at a location within an image. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018). Further, Plaintiffs' reliance on dicta from *Xactware* is unavailing because that case ***did not involve*** the '800 patent, and Plaintiffs do not even attempt to explain why the same conclusions should apply here.

## III. THE '538 PATENT IS INELIGIBLE

### A. Step One of *Alice*: The Claims Are Directed to an Abstract Idea

The claims of the '538 patent are directed to estimating roofing area using an image of the roof. Plaintiffs argue that the claims are not abstract because they apply a new formula for calculating area—"the calculation of which is disclosed in the specification"—using a roof's "predominant pitch." Opp. 15-16. This formula, however, is not claimed. The § 101 inquiry "must focus on the language of the Asserted Claims themselves," and the specification "cannot be used to import details from the specification if those details are not claimed." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019). Moreover, "mathematical algorithms, including those executed on a generic computer, are abstract ideas." *DDR Holdings*, 773 F.3d at 1256. Thus, "[a] claim directed to an abstract idea does not become eligible merely by adding a mathematical formula." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1328 (Fed. Cir. 2017). And whether the formula at issue is narrow makes no difference to eligibility. *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014).

Plaintiffs attach great importance to the proposition that this manner of calculating area

3

was "not found in the prior art." Opp. 16; *see also id.* 17. Even taking Plaintiffs' assertion as true, novelty is ultimately irrelevant to the inquiry. *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories."); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012) (noting that Einstein "could not have patented his famous [$E=mc^2$] law").

*CardioNet, LLC v. InfoBionic Inc.*, 955 F.3d 1358, 1370-71 (Fed. Cir. 2020), does not support Plaintiffs. *See* Opp. 16. There, the claims were directed to an improved device capable of more accurately detecting cardiac arrythmias by measuring heartbeat variability based on previously unused techniques. *CardioNet*, 955 F.3d at 1362, 1370-71. The mere identification of potential advantages associated with a claimed abstract idea, however, does not make the claims of the '538 patent analogous to those in *CardioNet*. "To qualify as 'a patent-eligible improvement,' the invention must be directed to a ***specific improvement in the computer's functionality***, not simply to use of the computer 'as a tool' to implement an abstract idea." *CardioNet, LLC v. InfoBionic, Inc.*, 2021 WL 5024388, at *4-5 (Fed. Cir. Oct. 29, 2021) (emphasis added). The claims of the '538 patent fall in the latter category, as they "focus[] on using a general-purpose computer to carry out the abstract idea." *Id.* at *4.

Plaintiffs again rely on a misreading of *McRO* to argue that so long as claimed techniques are not identical to some "prior manual methods," they are patent eligible. Opp. 16-17. As discussed above, however, *McRO* does not so hold. Whereas the claims in *McRO* were directed to a new approach to "a distinct process" of animation, the claims at issue here are directed to the abstract idea of calculating the area of a roof and merely invoke computers as a tool. Indeed, the "specific technological solution" that Plaintiffs contend "materially saved time and increased

4

accuracy" was simply the use of a computer to perform roof measurements as an "alternative to climbing onto a roof." Opp. 16. Merely claiming a new equation for calculating area (which neither the complaint nor the specification describes as a solution to a ***technological*** problem[2]) does not constitute an improvement to computers that renders the claims patent-eligible. *RecogniCorp*, 855 F.3d at 1328; *see also Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1372-73 (Fed. Cir. 2017).

Nor are the claims "necessarily rooted in computer technology," as Plaintiffs suggest (Opp. 15), merely because they are limited to a particular technology environment. The Federal Circuit has made clear that "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015); *see also Smart Sys.*, 873 F.3d at 1373.

Plaintiffs also assert, without explanation, that the claims of the '538 patent are distinguishable from those found ineligible in *Electric Power* because they require an "inventive set of components or methods, such as measurement devices or techniques, that . . . generate new data." Opp. 18 (citation omitted). Plaintiffs do not explain what these components and methods are, much less how or why they are required by the claims. The claims do not recite any specialized hardware, and merely require basic mathematical calculations.

Plaintiffs' other cited cases are also distinguishable. In *Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017), the claims at issue were "directed to systems and methods that use inertial sensors in a non-conventional manner to reduce errors." *Id*. at 1349-50. Here, by

---

[2] Indeed, to the extent the abstract idea at issue results in any efficiencies, those benefits would arise equally inside and outside the context of computer-based measurements of roofs in images. *See PersonalWeb*, 8 F.4th at 1318 ("Here, the asserted efficiency improvements are not different in kind from those that would accrue in the library analogue . . . .").

contrast, the claims of the '538 patent "merely recite conventional steps" and "conventional technology to implement these steps." *IPA Techs., Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 345 (D. Del. 2019); *see also SynKloud Techs., LLC v. HP Inc.*, 490 F. Supp. 3d 806, 822 (D. Del. 2020). In *TaKaDu Ltd. v. Innovyze, Inc.*, 2022 WL 684409 (D. Del. Mar. 8, 2022), the claims at issue were directed to methods of analysis that "improve[d] the existing technological process." *Id.* at *6. In the '538 patent, the claims at issue do not, but instead recite basic parameters for calculating the area of a roof using conventional computer components.

  **B.** **Step Two of *Alice*: The Claims Fail to Recite an Inventive Concept**

The '538 patent contains no inventive concept. The recitation of parameters used in a mathematical operation—*i.e.*, a "footprint" and "predominant pitch"—"add nothing outside the abstract realm." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169 (Fed. Cir. 2018). Plaintiffs argue that "the improvement and the particular steps recited in the claims supply an inventive concept." Opp. 18-19. But they never explain what steps or purported improvements constitute an inventive concept, and state only that the '538 patent employed the "simpler" approach of using "predominant pitch" and a "footprint of the roof" to provide an estimated area. Opp. 18-19. But the use of "predominant pitch" to calculate a roofing area (*i.e.*, a new mathematical formula) is the abstract idea itself. "[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech*, 899 F.3d at 1290 (citation omitted).

**IV.** **THE '840 PATENT IS INELIGIBLE**

  **A.** **Step One of *Alice*: The Claims Are Directed to an Abstract Idea**

The claims of the '840 patent are directed to the idea of determining the pitch of a roof section using an aerial image of a roof. The claims at issue recite the display of a "pitch determination maker"—a virtual protractor—which allows the user to manually determine the

pitch of a roof section, which in turns modifies a model of the roof. Plaintiffs argue that the "claims include specific and concrete requirements that render them non-abstract," including "the use of a 'pitch determination marker'" that is overlaid on an image of a roof. Opp. 19. Plaintiffs also assert that this "pitch determination marker" constitutes a "specific technical solution[]" to a technical problem, and is therefore non-abstract. Opp. 20. Yet Plaintiffs admit the problem that is purportedly solved is "the need to climb up on a roof to determine pitch"—which is not a *technological* problem at all. Opp. 20.

Plaintiffs argue that evaluating this Motion on the merits is "nothing more than a waste of judicial resources" (Opp. 21) because a prior challenge to the '840 patent by different defendants in *Xactware* was unsuccessful. The decisions of other district courts, however, "are not binding on this court and remain only persuasive authority." *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, 2018 WL 6521978, at *6 (D. Del. Dec. 12, 2018) (rejecting argument that court "must find the patents-in-suit patent eligible because other courts" in three other districts did).

The *Xactware* decision, however, is not even useful as persuasive authority here. In *Xactware*, the district court ruled collectively on *all* the asserted patents, concluding that the asserted claims "present a solution . . . to the method of climbing up on the roof" by "having the computer correlate two non-stereoscopic views of different sections of a roof." *EagleView Techs., Inc. v. Xactware Sols., Inc.*, 485 F. Supp. 3d 505, 518 (D.N.J. 2020); *see also EagleView Techs., Inc. v. Xactware Sols., Inc.*, 358 F. Supp. 3d 399, 408-09 (D.N.J. 2019). Although that description fairly characterized most of the patents at issue there, it is not applicable to the '840 patent. The claims of the '840 patent do not concern the correlation of multiple images at all, but are instead directed to measuring the pitch of a roof from a *single* image using a virtual protractor.

In addition, at oral argument on appeal, the Federal Circuit expressed significant skepticism

7

about the eligibility of the claims.[3] A mere month later, presumably to avoid an adverse decision, the parties settled the matter and dismissed the appeal.[4]

Moreover, the Federal Circuit has provided additional guidance regarding § 101 since the district court's decision in *Xactware* that further supports a finding of ineligibility here. For example, in *Yu v. Apple Inc.*, 1 F.4th 1040 (Fed. Cir. 2021), the Federal Circuit found ineligible claims directed to "the idea and practice of using multiple pictures to enhance each other." *Id.* at 1043. The plaintiff argued that the claims at issue "provide[d] a specific solution" to problems in digital camera functionality, but the Federal Circuit rejected these arguments, concluding that the "solution to those problems [was] the abstract idea itself." *Id.* at 1044. Here, Plaintiffs similarly assert that the '840 patent improves computer technology and provides a technical solution to unnamed technical problems (Opp. 20), but the only solution provided is the abstract idea itself—*i.e.*, determining the pitch of a roof section using an aerial image of a roof.

B.     **Step Two of *Alice*: The Claims Fail to Recite an Inventive Concept**

The claims of the '840 patent are directed to the use of a virtual protractor overlaid onto an aerial image of a roof. To the extent the claims even require a computer, the computer only performs routine, patent-ineligible tasks such as receiving and displaying information.

Plaintiffs argue that the claims of the '840 patent recite an inventive concept because "the record is clear that the claim elements—including the iterative use of a pitch determination

---

[3] https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-1048_10082021.mp3 (oral argument proceedings); *see also* Britain Eakin, *Fed. Circ. Weighs Undoing $375M EagleView Win Under Alice*, Law360 (Oct. 8, 2021), https://www.law360.com/articles/1429560/fed-circ-weighs-undoing-375m-eagleview-win-under-alice (noting the Federal Circuit suggested that the patents "might be invalid under Alice").
[4] Adam Lidgett, *EagleView, Verisk End Patent Fight at Fed. Circ.*, Law360 (Nov. 9, 2021), https://www.law360.com/articles/1439222 (noting that parties settled "about a month after the Federal Circuit appeared to call the win into question").

marker—are more than well-understood, routine, or conventional activity." Opp. 22.  But Plaintiffs do not point to anything suggesting the use of a protractor to measure lines in an image is not routine or conventional.  *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) (courts may "disregard conclusory statements" that the claims improve the functioning of a computer).  Moreover, Plaintiffs' argument that the claims obviate the need for a physical site visit only proves the point: "[s]teps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent-eligibility."  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (citation omitted) (alteration in original).

Plaintiffs also rely on generalized statements that EagleView's technology was "innovative" and a "breakthrough." Opp. 22 (citing D.I. 12 ¶¶ 17-21).  But Plaintiffs do not explain how these nonspecific remarks about EagleView's technological platform demonstrate that the specific claim limitations at issue supply an inventive concept.

## V.   THE IDENTIFIED CLAIMS ARE REPRESENTATIVE

Roofr's Opening Brief explained in detail how the specific claims identified in the Amended Complaint, as well as other claims potentially at issue, are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see also* Op. Br. 24-25.  Courts "[m]ay treat a claim as representative" where "the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

Plaintiffs respond by arguing that some claims—*i.e.*, dependent claims 2-10 of the '800 patent, claims 7 and 8 of the '840 patent, and claim 13 of the '538 patent—are distinct from the representative claims.  Plaintiffs are incorrect.  With respect to claims 2-9 of the '800 patent, which concern "outline drawing[s]" (Opp. 23), the '800 patent itself explains that such outlines were

9

routine and conventional: "for many years, companies and products have offered . . . reporting software reports using aerial imagery on which roof outlines are traced." '800 patent at 1:26-29. As to claim 10, which provides that the image is an overhead view, the '800 patent states that overhead images like those provided by Google Earth were popular at the time of the invention. *Id.* at 3:52-54, 10:6-13. Although Plaintiffs assert that claims 7 and 8 of the '840 patent—which provide, respectively, that the pitch determination marker includes "a member that is adjustable" and "an envelope tool having two surfaces that are adjustable"—"enhance the function" of the pitch determination marker (Opp. 23), they do not explain how these minor modifications of a standard protractor evoke an inventive concept. And with respect to claim 13 of the '538 patent, Plaintiffs argue that an inventive concept arises from the claimed functions being "split between at least two host systems" (Opp. 24), but make no effort to explain how separating tasks between interconnected systems reflects an inventive concept. *See buySAFE*, 765 F.3d at 1355.

## VI.   ROOFR'S MOTION IS NOT PREMATURE

There remains no factual issue that precludes this Court from determining the patents are invalid. The purported factual issues Plaintiffs claim must be resolved actually need no resolution; the patents themselves describe what was common practice, for example, such as measuring a roof using an image. Op. Br. 14-15; Opp. 24-25. Plaintiffs argue that the "history of acclaim for EagleView's technology is strong evidence" that the claims are not ineligible (Opp. 24), but fail to tie purported industry praise for EagleView's products to any actual claims. *See TriPlay, Inc. v. WhatsApp Inc.*, 2018 WL 3545500, at *2 (D. Del. July 24, 2018). Plaintiffs also summarily allege the asserted claims are eligible. But a plaintiff cannot "avoid dismissal simply by reciting in the complaint that the invention at issue is novel and nonconventional." *British Telecommc'ns PLV v. IAC/InterActiveCorp.*, 381 F. Supp. 3d 293, 322-23 (D. Del. 2019). Courts have "required detailed factual allegations raising issues of fact before precluding dismissal." *Id.* at 323.

10

|  |  |
|---|---|
| OF COUNSEL:<br><br>Yury Kapgan<br>QUINN EMANUEL URQUHART<br>   & SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA  90017<br>(213) 443-3000<br><br>Kevin P.B. Johnson<br>Dallas Bullard<br>QUINN EMANUEL URQUHART<br>   & SULLIVAN, LLP<br>555 Twin Dolphin Dr., 5th Floor<br>Redwood Shores, CA  94065<br>(650) 801-5000<br><br>Ron Hagiz<br>QUINN EMANUEL URQUHART<br>   & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY  10010<br>(212) 849-7000<br><br>June 3, 2022 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br><br>_____<br>Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com<br><br>*Attorneys for Defendant Roofr, Inc.* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 3, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Karen E. Keller, Esquire<br>Andrew E. Russell, Esquire<br>Nathan R. Hoeschen, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiffs* | **VIA ELECTRONIC MAIL** |
| L. Kieran Kieckhefer, Esquire<br>SHEARMAN & STERLING LLP<br>535 Mission Street, 25th Floor<br>San Francisco, CA  94105<br>*Attorneys for Plaintiffs* | **VIA ELECTRONIC MAIL** |
| Matthew G. Berkowitz, Esquire<br>Patrick Colsher, Esquire<br>Yue (Joy) Wang, Esquire<br>SHEARMAN & STERLING LLP<br>1460 El Camino Real, 2nd Floor<br>Menlo Park, CA  94025<br>*Attorneys for Plaintiffs* | **VIA ELECTRONIC MAIL** |

/s/ *Jeremy A. Tigan*

Jeremy A. Tigan (#5239)