IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EAGLE VIEW TECHNOLOGIES, INC. and )
PICTOMETRY INTERNATIONAL CORP., )
                                          )
         Plaintiffs, )
                                            )
       v. )    C.A. No. 21-1852 (RGA)
                                            )
ROOFR, INC., )
                                            )
         Defendant. )

**DEFENDANT ROOFR INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS THAT THE REMAINING PATENT CLAIMS ARE <u>INELIGIBLE</u>**

OF COUNSEL:

Yury Kapgan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Kevin P.B. Johnson
Dallas Bullard
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
(650) 801-5000

Ron Hagiz
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

March 30, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
ccucuzzella@morrisnichols.com

*Attorneys for Defendant Roofr, Inc.*

**TABLE OF CONTENTS**

**Page**

I.      Introduction.................................................................................................................1

II.     The '840 Patent Claims Are Not Patent Eligible .................................................................2

III.    The '538 Patent Claims Are Not Patent Eligible .................................................................7

IV.    The '800 Patent Claims Are Not Patent Eligible .................................................................9

V.     Conclusion ....................................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*American Axle & Mfg. v. Neapco Holdings,*
    967 F.3d 1285 (Fed. Cir. 2020)............................................................................... 3, 6, 7

*Apple, Inc. v. Ameranth, Inc.,*
    842 F.3d 1229 (Fed. Cir. 2016)............................................................................... 10

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.,*
    703 F. App'x 986 (Fed. Cir. 2017) ......................................................................... 8

*Bascom Global Internet Servs. v. AT&T Mobility,*
    827 F.3d 1341 (Fed. Cir. 2016)............................................................................... 8

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018)............................................................................... 2

*Bilski v. Kappos,*
    561 U.S. 593 (2010)................................................................................................. 9

*ChargePoint, Inc. v. SemaConnect, Inc.,*
    920 F.3d 759 (Fed. Cir. 2019)................................................................................. 3

*Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016)....................................................................... 5, 7, 8, 10

*Enco Sys., Inc. v. DaVincia, LLC,*
    845 F. App'x 953 (Fed. Cir. 2021) ......................................................................... 3

*Encyclopedia Britannica, Inc. v. Dickstein Shapiro LLP,*
    128 F. Supp. 3d 103 (D.D.C. 2015)....................................................................... 5, 6

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.,*
    50 F.4th 1371 (Fed. Cir. 2022) .............................................................................. 5, 6, 8, 9

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
    837 F.3d 1299 (Fed. Cir. 2016)............................................................................... 2, 3

*TQ Delta, LLC v. 2Wire, Inc.,*
    Civ. No. 13-1835-RGA, 2019 WL 9093480 (D. Del. June 24, 2019)................................ 1

*Trading Techs. Int'l, Inc. v. IBG LLC,*
    921 F.3d 1084 (Fed. Cir. 2019)............................................................................... 6

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
    874 F.3d 1329 (Fed. Cir. 2017)............................................................................... 7

I.      INTRODUCTION

Plaintiffs' opposition largely seeks to reargue issues the Court already decided in determining that claim 1 of each asserted patent is patent ineligible.  *See* D.I. 30.  More than half of Plaintiffs' argument is directed to the remaining independent claims of the asserted patents, even though Plaintiffs do not dispute that nearly all of those claims are substantively identical to claim 1 of each asserted patent.[1]  *See* Opp. 7-13, 16-17, 19.  Plaintiffs even acknowledge that the Court previously rejected the arguments they now repeat, but nonetheless urge the Court to reach a different conclusion with respect to the remaining claims.  *See, e.g.*, Opp. 7, 13.  But Plaintiffs are not entitled to a second bite at the apple on issues the Court has already decided.  Even if Plaintiffs' rehashed arguments are viewed as a motion for reconsideration—despite the fact that Plaintiffs did not file any such motion by the deadline set forth in the Local Rules—this Court has repeatedly held that a motion for reconsideration "is not an appropriate vehicle to reargue issues that the court has already considered and decided."  *TQ Delta, LLC v. 2Wire, Inc.*, Civ. No. 13-1835-RGA, 2019 WL 9093480, at *1 (D. Del. June 24, 2019).

Plaintiffs' new arguments do not support a finding of patent eligibility with respect to the remaining claims.  Plaintiffs rely on two of the USPTO's Subject Matter Eligibility Examples ("PTO Examples," D.I. 48-1)—which are guidance to patent practitioners, not binding authority on this Court—but these examples are not comparable to the claims at issue here, except at the highest level of abstraction (*e.g.*, they involve user interfaces).  Rather, the PTO Examples are directed to different inventions involving intelligent rearrangement of icons on a computer display, and a networked system for real-time management of medical information, and do not stand for the broad proposition that claims involving user interfaces are patent eligible.  Plaintiffs

---

[1]    Plaintiffs only attempt to distinguish independent claim 13 of the '538 patent, which is addressed in more detail below.  Opp. 17.

also challenge Roofr's discussion of the remaining claims as "cursory" (Opp. 1), but Roofr's

motion discusses every remaining claim, compares them to the claims the Court already deemed

ineligible, and cites specific authority showing that the differences do not render the claim patent

eligible.   Plaintiffs cite no authority to support their argument that more is required.   To the

contrary, it is Plaintiffs' burden to "present any meaningful argument for the distinctive

significance of any claim limitations not found in [a] representative claim"; otherwise, the Court

"may treat [the] claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir.

2018) (emphasis added).   And Plaintiffs' claim-specific arguments, addressed in detail below,

consist of little more than unsupported attorney argument.   Plaintiffs do not even attempt to

distinguish the cases cited by Roofr, which establish that the remaining claims are not eligible.

## II.     THE '840 PATENT CLAIMS ARE NOT PATENT ELIGIBLE

Plaintiffs do not dispute that the independent claims of the '840 patent are identical in

substance.   Thus, because the Court has already held that claim 1 of the '840 patent is ineligible,

independent claims 10 and 16 should be found ineligible for the same reasons.   *See* D.I. 30 at 17-

21.   As discussed below, because the dependent claims add no meaningful substance to the

independent claims, they should also be dismissed.

Plaintiffs' opposition primarily attempts to reargue two issues the Court has already

decided—whether the claimed "pitch determination marker" is an abstract idea, and whether

prior decisions involving Plaintiffs' patents should be given persuasive authority.   *See* Opp. 7-9,

12-13.   But Plaintiffs offer no legal basis for the Court to reconsider these issues when it has

already decided them in ruling on claim 1.

Plaintiffs' rehashed arguments also fail on the merits.   Plaintiffs first attempt to liken the

claimed "pitch determination marker" to the automated lip synchronization in *McRO, Inc. v.*

*Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016).   Opp. 8.   But unlike the

unconventional "rules" applied by *McRO*'s invention, which were different from how human animators animate lip movement, the '840 patent does not teach any unconventional way of determining pitch. Plaintiffs do not point to anything in the specification that even suggests the "pitch determination marker" uses an unconventional or improved technique to measure pitch. Indeed, the specification does not even disclose ***how*** the pitch measurement is performed—it simply states that once a user has positioned the marker on the image (like a human aligns a protractor with the edges of a shape), the "roof estimation system determines the pitch of the roof sections, based on the configuration of the marker **520** with respect to the image and the reference grid." '840 Patent at 13:28-30; *see also id.* at 12:59-62; *see also Enco Sys., Inc. v. DaVincia, LLC*, 845 F. App'x 953, 957 (Fed. Cir. 2021) (rejecting as ineligible claims that "focus[] just on replacing 'pen and paper methodologies' with 'data synthesis technology'" without identifying "specific, assertedly improved processing techniques").

Plaintiffs also argue that because one embodiment of the "pitch determination market" in the specification uses three-dimensional information, the claims require "using multiple photographs." Opp. 8; *see also* Opp. 9 (raising a similar argument as to *Alice* Step 2). However, Plaintiffs cannot import limitations from embodiments into the claims for purposes of the patent eligibility analysis. *See* D.I. 30 at 13 ("[T]he § 101 inquiry must focus on the language of the Asserted Claims themselves, and the specification cannot be used to import details from the specification if those details are not claimed" (quoting *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019))); *American Axle & Mfg. v. Neapco Holdings*, 967 F.3d 1285, 1293 (Fed. Cir. 2020) ("[W]e have repeatedly held that features that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis."). Plaintiffs have conceded that

"there's nothing in claim 1 that talks about having two different non-stereoscopic aerial views," and do not dispute that claims 10 and 16 are no different in this regard.  D.I. 27 at 67:9-15.

Plaintiffs also repeat their failed argument that other courts have found the '840 patent to be eligible.  Opp. 11-13.  As this Court already recognized, however, none of the prior decisions specifically analyzed the '840 patent; rather, those cases involved multiple patents, which were evaluated "as a group."  D.I. 30 at 19.  And as the Court already determined with respect to claim 1, these decisions were based on findings that the asserted claims were directed to "correlation of non-stereoscopic (*i.e.*, non-3-D) aerial roof images to generate a three-dimensional model of the roof."  *Id.*  As Plaintiffs have acknowledged, however, nothing in the independent claims requires the use of multiple aerial images.  *See id.* at 19-20; D.I. 27 at 67:9-15.  Thus, Plaintiffs' argument rests on their improper attempt to import unclaimed aspects of the purported invention from the specification, which, as discussed above, is not permitted.

Plaintiffs also attempt to compare the independent claims of the '840 patent to PTO Examples 37 and 42.  Opp. 9-11.  But these examples are fundamentally different from the claims of the '840 patent.  Example 37 describes a problem in conventional graphical user interfaces, in which a "large number of icons" make it "difficult to find the icons used most," and includes claims directed to improvements to the interfaces by "track[ing] the number of times each icon is selected" or "how much memory has been allocated to the individual processes . . . over a period of time," and automatically rearranging the icons accordingly.  PTO Examples at 1. Similarly, Example 42 identifies problems in existing computerized medical records systems, which cannot "share updated information about a patient's condition" because records are maintained locally in "non-standard format[s]," and includes claims directed to an improved system that, *inter alia*, "converts and consolidates patient information from various physicians

and health-care providers into a standardized format." *Id.* at 17.   Importantly, both examples also illustrate claims directed to similar subject matter that ***would not*** be patent eligible.  *See id.* at 4-5, 19-20.   Plaintiffs do not explain how the independent claims of the '840 patent are comparable to the exemplary eligible claims, beyond conclusory statements that the claims all involve a "specific method" or "practical application."  Opp. 10-11.   But Plaintiffs' reasoning also applies to the exemplary ***ineligible*** claims provided by the PTO, as well as numerous Federal Circuit cases finding ineligible claims that purported to recite specific methods or applications.  *See* PTO Examples at 4-5, 19-20; *see also, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377-83 (Fed. Cir. 2022).  Plaintiffs do not otherwise explain how the independent claims of the '840 patent, which do not limit the "pitch determination marker" to any particular form or any particular methodology for determining pitch, would qualify under the PTO's guidance.

Plaintiffs' arguments regarding the dependent claims similarly do not provide any meaningful distinction from the independent claims that would warrant a finding of eligibility.

**Claims 2, 7, 8, 12, and 17**:  Claims 2 and 17 merely state that the "pitch determination marker" is "adjustable" in some unspecified manner, and render the underlying tool no less abstract.  Claims 7, 8, and 12 describe different ways in which the "pitch determination marker" may be visually represented on the display—*i.e.*, as an "envelope tool" or a "protractor tool." Plaintiffs offer no support for their assertion that these tools have "no pre-computer analog." Opp. 15.  As noted above, the specification does not specify how the "pitch determination marker" (or any of its embodiments) measure an angle, and thus both embodiments, at root, are simply "the computer analog of a standard real-world protractor, the purpose of which is, of course, to draw and measure angles."  D.I. 30 at 18; *see also Encyclopedia Britannica, Inc. v.*

*Dickstein Shapiro LLP*, 128 F. Supp. 3d 103, 112 (D.D.C. 2015) ("variations of activities humans have performed for thousands of years" are "abstract ideas").

**Claims 3 and 20**:  Claim 3 requires transmitting information based on the roof model, and claim 20 additionally requires determining the measurement information from the roof model.  But the claims do not limit how the measurements are determined; indeed, both claims are so broad that they would encompass reading measurement information manually entered by a human user, and then transmitting it.  *See* D.I. 30 at 13 (noting that "results-oriented" claims are abstract); *Zillow*, 50 F.4th at 1378; *American Axle*, 967 F.3d at 1293-94.  Neither claim requires the use of multiple images, as Plaintiffs contend.  Opp. 15.

**Claims 4 and 21**:  These claims merely require associating a pitch value with a portion of the roof model—in other words, storing information, which is a generic computer function.  *See* '840 patent at 22:11-12 (pitch may be stored in "one or more data structures representing planar roof sections").  They do not require deriving 2D information from a 3D model.  Opp. 15.

**Claims 5, 6, 13, 14, and 22**:  These claims require displaying a "wireframe rendering" or "interactive user interface" without any detail.  Plaintiffs purport to describe hypothetical ways in which a user may employ these elements (Opp. 16), but those are not specified in the claims. Importantly, the claims do not specify how the wireframe rendering is generated, or how the interactive user interface is implemented, and thus are not directed to any unconventional implementation.  Mere "display of information" is an abstract idea.  *Zillow*, 50 F.4th at 1377-83; *see also, e.g.*, *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092-95 (Fed. Cir. 2019) (finding claims directed to an interactive interface to access and display data are abstract).

**Claims 11, 18, and 19**:   As plaintiffs acknowledge, these claims merely require generating a report, which is not patent eligible.  *Elec. Power*, 830 F.3d at 1353 (claims for "collecting information" and "displaying certain results" are not patent eligible).

**Claims 9, 15, and 28**: These claims state that the model of the roof is three-dimensional, but do "not disclose any specific method for how one translates two-dimensional information to three-dimensional information" that might render them patent eligible.  D.I. 30 at 21.

**Claims 23-25**:  Plaintiffs contend these claims are comparable to those found to be patent eligible in *Xactware* because they require "registering" multiple aerial images to a "reference grid."   Opp. 14.   However, both the claims and the specification do not specify ***how*** any registration or correlation between images is performed, and simply use the "result-based functional language" that the Federal Circuit has rejected.  *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *American Axle*, 967 F.3d at 1293-94 (holding ineligible claim that "defines a goal" and covers "any method implemented by computer modeling and trial and error" for achieving that goal).  Indeed, even the disclosures in the specification that Plaintiffs quote merely state that images are registered, without disclosing any specific manner for doing so.  The specification even states that the necessary information may be provided as input from a human operator.  *See* '840 patent at 5:2-6.

**Claims 26-27**:  These claims recite an additional step for correcting the "lean" of an image.   Like claims 23-25, however, they do not specify a technique for performing lean correction, and merely claim the results—which is insufficient for eligibility.  *See* D.I. 30 at 13.

## III.      THE '538 PATENT CLAIMS ARE NOT PATENT ELIGIBLE

Plaintiffs do not dispute that independent claim 14 of the '538 patent is substantively identical to claim 1.  Plaintiffs contend, however, that independent claim 13 is distinct from claim 1 because it uses two host systems to determining the geographic location of a roof, and to

analyze roof images and generate a report, respectively.  Opp. 17.  But Plaintiffs do not dispute that the two host systems are generic computer systems that "cannot supply an inventive concept."  D.I. 30 at 10; *see also* '538 patent at 4:22-6:67 (describing the "host systems" as based on generic computer hardware and functions).   The Federal Circuit has rejected similar arguments that distributing functionality across multiple servers recites a patent-eligible improvement to a "technological infrastructure."  *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, 703 F. App'x 986, 990 (Fed. Cir. 2017).  Nor do Plaintiffs point to any disclosure in the '538 patent that even suggests that using separate computers to implement different functionality is unconventional.  Thus, claim 13 is distinguishable from the claims in *Bascom Global Internet Servs. v. AT&T Mobility*, 827 F.3d 1341 (Fed. Cir. 2016).  Those claims were directed to an internet content filter that the specification distinguished from prior art filters and solved a specific technological problem associated with the prior art implementations.  *Id.* at 1350-52.

Plaintiffs also argue that the independent claims are comparable to PTO Example 42. Opp. 17.  Beyond a single conclusory sentence asserting that the '538 independent claims are "analogous," however, Plaintiffs do not explain how claims directed to performing conventional roofing measurements and displaying them in a report are comparable to claims directed to networked medical record systems for consolidating and standardizing records maintained in a non-standard, localized format.  And Plaintiffs ignore the extensive Federal Circuit precedent holding that collecting and displaying specific categories of information is not patent eligible. *See, e.g.*, *Elec. Power*, 830 F.3d at 1353; *Zillow*, 50 F.4th at 1378.

Plaintiffs do not respond to Roofr's arguments as to many of the dependent claims, an implicit concession that these claims do not add any patent eligible subject matter to the independent claims.  Plaintiffs only address dependent claims 9, 10-11, and 16-18.

**Claims 9 and 16**: Plaintiffs analogize these claims to those at issue in prior cases involving Plaintiffs' patents because they require the use of "oblique images" to determine information about the roof.  Opp. 18.  As with the dependent claims of the '840 patent, however, these claims do not specify how any information is derived from oblique images, and merely assert that it is determined.  Indeed, as noted in Roofr's opening brief, and as Plaintiffs fail to address in their opposition, the specification even discloses that the oblique image analysis may be performed by a "website[]" that evaluates "images to provide the footprint of the roof," rather than disclosing any particular implementation for analyzing oblique images.  Such "result-oriented" claims are not patent eligible.  D.I. 30 at 13 (quoting *Zillow*, 50 F.4th at 1378).

**Claims 10-11 and 17-18**: Plaintiffs argue that these claims "recite specific methods for calculating predominant pitch."  Opp. 18.  Claims 10 and 17, however, merely state that the predominant pitch is "based on" multiple pitch values or the footprint of the roof, without requiring any particular method for computing the predominant pitch.  And claims 11 and 18 merely recite a conventional average or weighted average function.  Plaintiffs cite no authority in support of their argument that a claim is patent eligible if it recites a particular mathematical formula.  To the contrary, the Supreme Court has routinely held that a claim that merely recites a mathematical formula used in a particular technological environment is not patent eligible.  *See Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010).  Indeed, Plaintiffs ignore the Court's prior ruling, explaining that even if the claims recite a "formula" for determining "roofing area and predominant pitch," they are still directed to an abstract idea because the computation comprises nothing more than "a series of mathematical calculations."  D.I. 30 at 13-14.

## IV.    THE '800 PATENT CLAIMS ARE NOT PATENT ELIGIBLE

Plaintiffs do not dispute that there is no substantive difference between the independent claims of the '800 patent that would warrant deviating from the Court's prior ruling finding

independent claim 1 patent ineligible. Plaintiffs' only argument with respect to independent claims 11 and 17 is that they are comparable to PTO Example 37. Opp. 19. Whereas PTO Example 37 recites an unconventional computer implementation that solves a specifically articulated problem in graphical user interfaces, the '800 patent makes clear that the recited user interfaces use generic computer inputs and methods. *See* '800 patent at 10:19-22; *see also id.* at 3:12-15 (defining "computer input" as data or information "provided by a computer user," including generic methods such as "mouse clicks," "check boxes," and "dialog boxes"). Plaintiffs point to nothing in the claims or specification of the '800 patent that even suggests that any unconventional implementation is used to generate the claimed user interface. *See also* D.I. 30 at 9-10 (finding that the technology recited in claim 1 is "entirely conventional"); *see also Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240-43 (Fed. Cir. 2016) (holding that claims directed to generating menus in a graphical user interface using standard computer hardware and software functions were ineligible).

Plaintiffs' only argument as to the dependent claims is that they recite "specific useful contents" to include in a roof report. Opp. 20. But it is well settled that simply selecting categories of information to display does not render a claim patent eligible. *See Elec. Power*, 830 F.3d at 1355 ("[S]electing information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes . . . ."). And Plaintiffs do not dispute that the claims provide no limitation as to how the recited information is determined for inclusion in the report. Accordingly, none of the dependent claims add any meaningful substance to the independent claims sufficient to render them patent eligible.

V.    CONCLUSION

For the foregoing reasons, Roofr respectfully requests that the Court grant its motion and find that the remaining claims of the asserted patents are patent ineligible under 35 U.S.C. § 101.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
ccucuzzella@morrisnichols.com

*Attorneys for Defendant Roofr, Inc.*

OF COUNSEL:

Yury Kapgan
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Kevin P.B. Johnson
Dallas Bullard
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
(650) 801-5000

Ron Hagiz
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

March 30, 2023

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 30, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 30, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Karen E. Keller, Esquire<br>Andrew E. Russell, Esquire<br>Nathan R. Hoeschen, Esquire<br>Emily S. DiBenedetto, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| L. Kieran Kieckhefer, Esquire<br>SHEARMAN & STERLING LLP<br>535 Mission Street, 25th Floor<br>San Francisco, CA  94105<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Matthew G. Berkowitz, Esquire<br>Patrick Colsher, Esquire<br>Yue (Joy) Wang, Esquire<br>SHEARMAN & STERLING LLP<br>1460 El Camino Real, 2nd Floor<br>Menlo Park, CA  94025<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)